McClendon, j.
|2In this “child in need of care” case, the maternal grandmother appeals the trial court’s judgment that denied her petition to intervene in the proceedings. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On September 25, 2007, three-year-old A.L. was adjudicated a child in need of care due to the neglectful lifestyle of her mother and the absence and neglect of her father. The judgment of adjudication and disposition was signed on October 10, 2007. With certain restrictions, A.L. was allowed to remain in the custody of her mother, S.L., and her maternal grandmother, M.F.[1]
On October 18, 2007, the district court issued an instanter order, taking A.L. into the temporary custody of the state through the Department of Social Services’ Office of Community Services (OCS), after finding that S.L. was unable to provide independently for the needs of A.L. Based *619 on the affidavit submitted in support of the order, the court determined the following. S.L. was in a relationship with Joshua Sicard involving domestic violence and substance abuse. S.L. had been admitted to a psychiatric facility in July 2007 due to a suicide attempt after a violent altercation with Sicard. Also, S.L. and her mother, M.F., were involved in a physical altercation in the presence of A.L. that involved hitting, cursing, and yelling. S.L. had moved several times in the past few months, and at the time of the order was living in a home with Sicard and two other people. At the insistence of M.F., S.L. had previously signed a temporary transfer of custody of A.L. to M.F. The court determined that S.L. was not able to provide for the daily needs of her daughter. J.S., the biological father of A.L., was absent and never involved in A.L.’s life.
Additionally, A.L. was living in the home of M.F., who had been the subject of several valid investigations by OCS for lack of supervision and dependency. M.F.’s children were removed from her care in 1987 and in 2001 |sdue to grave concerns about her mental and emotional functioning. OCS was also involved with M.F.’s son, P.L., due to valid allegations of lack of supervision, sexual fondling, and exposure toward his own children and a step-child. S.L. also reported that she was sexually abused by P.L. as a child and that her mother knew about it but told her not to say anything. Evaluations from a licensed social worker and a clinical psychologist both indicated that M.F. was unable to protect A.L. from harm due to her mental functioning and her denial that her son had engaged in any inappropriate sexual behavior with children. There were also concerns that A.L. may have been sexually abused. Both reports indicated that A.L. should not be placed in the home of M.F.
Periodic review hearings followed, continuing A.L. in the custody of OCS, but always with the goal of reunification between A.L. and S.L. However, in a twelvemonth case review letter to the court on October 1, 2008, OCS requested a goal change to adoption.[2] Apparently in response thereto, M.F. filed a petition for intervention on October 23, 2008. Therein, she stated her belief that at the next case review hearing OCS would be recommending adoption and that her desire was for A.L. to be returned to her in the event she was not returned to S.L. M.F. also stated that she was willing to adopt A.L. if parental rights were terminated.[3] M.F. contended that she could provide a permanent, safe and stable home and meet all of A.L.’s needs, and asked that she be given preferential consideration in the permanency planning for A.L. Thus, M.F. urged, good cause existed for the intervention pursuant to LSA-Ch.C. art. 697, as her interest in the case was to facilitate the permanent placement of A.L.
Following a hearing on March 17, 2009, the district court denied M.F.’s request for intervention finding no good cause why the intervention should be allowed. Thereafter, M.F. timely appealed.
14APPLICABLE LAW
Article 697 of the Louisiana Children’s Code provides:
*620 A. For good cause shown, the court or administrative review body may allow any interested person, agency, or organization to intervene in the case review proceedings to facilitate the permanent placement of the child and to insure that the best interests of the child are protected.
B. Upon motion of a party and for good cause shown, the court or administrative review body may limit the nature and extent of intervener’s participation in the case review hearing.
Thus, intervention is discretionary with the court and is limited “to facilitate the permanent placement of the child and to insure that the best interests of the child are protected.” LSA-Ch.C. art. 697 A.
DISCUSSION
On appeal, M.F. argues that the district court committed reversible error in denying the petition for intervention because the court did not consider M.F.’s home a suitable placement, rather than considering whether “good cause” existed for the intervention. We disagree.
M.F. contends that because she is A.L’s grandmother, her relationship with A.L. should be given preference and be sufficient to constitute “good cause” for purposes of the intervention. The Children’s Code does require that placements with relatives be given preference, unless the court has made a specific finding that such placement is not in the child’s best interest. LSA-Ch.C. art. 683 B. In this matter, following a case review hearing on October 23, 2007, the district court issued an order of continued custody with OCS finding it necessary for the child’s safety and protection. The court further found that although OCS had attempted to find suitable relatives for placement, “said relative placement is not in the best interest of the child for the reason that: the immediate and extended family have a long child protection history which prevented the agency from immediately considering relatives.” Thus, the court had made a specific finding that relative placement was not in A.L.’s best interest.
| bAt the hearing, M.F. had trouble remembering the number of valid investigations by OCS regarding her parenting. She remembered four, two of which resulted in her children being placed in foster care. She acknowledged that one of the reasons S.L. had been placed in foster care as a child was because of the allegations of sexual abuse made by S.L. against P.L. M.F. also acknowledged that P.L. was currently in jail for alleged sexual abuse of his girlfriend’s daughter. However, M.F. had trouble acknowledging any wrongdoing by P.L. and was unable to acknowledge that P.L. may have abused A.L. She could only say that P.L. was never left alone with A.L. M.F. also testified that she was living in the home of her employer, providing him care since he was disabled.
The OCS case manager testified that A.L.’s disclosure of sexual abuse by P.L. led to her removal from M.F.’s home. She also stated that OCS was against the placement of A.L. with M.F.
The district court concluded that A.L. would be at risk in M.F.’s home. Discussing M.F.’s history with OCS and her own children, the physical altercation between M.F. and S.L., M.F.’s psychological diagnosis of bi-polar disorder, and M.F.’s reaction to the allegations of sexual abuse by P.L., the court found that M.F. would not act differently than she had in the past and therefore would not protect A.L. The court also stated that M.F. had no permanent place to live and no adequate living situation for A.L. Based on M.F.’s testimony alone, the court found that M.F. was not a valid placement.
*621 Upon a thorough review of the record, we cannot say that the district court erred in finding that M.F. failed to meet her burden of showing “good cause” for an intervention. Intervention by M.F. would neither assist in facilitating the permanent placement of A.L. nor insure the child’s best interests. Thus, we cannot say that the distinct court abused its discretion in denying M.F.’s petition to intervene.
| fiFor the above and foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed to M.F.
AFFIRMED.

. Two of those restrictions were that there was to be no contact between A.L. and her uncle, P.L., and that there was to be no contact between A.L. and Joshua Sicard.

. After several continuances, the twelvemonth dispositional case review and permanency review hearing was held on March 17, 2009. The court ordered that A.L. be continued in the custody of OCS, that reunification was impossible at that time, but that reunification was the plan for permanent placement of A.L.

. A.L.'s father, J.S., surrendered his parental rights by a voluntary act of surrender dated February 9, 2009.